## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **AZORIA CAPITAL, INC.** | : | |
| | : | |
| | : | |
| *Plaintiff,* | : | Case No. 1:25-cv-02388 |
| v. | : | |
| | : | |
| **JEROME H. POWELL, in his official** | : | |
| **capacity as Chair of the Board of Governors of** | : | |
| **the Federal Reserve System and Chair of the** | : | |
| **Federal Open Market Committee; JOHN C.** | : | |
| **WILLIAMS, in his official capacity as President** | : | |
| **of the Federal Reserve Bank of New York and** | : | |
| **Vice Chair of the Federal Open Market** | : | |
| **Committee; MICHAEL S. BARR, MICHELLE** | : | |
| **W. BOWMAN, SUSAN M. COLLINS, LISA D.** | : | |
| **COOK, AUSTAN D. GOOLSBEE, PHILIP N.** | : | |
| **JEFFERSON, ADRIANA D. KUGLER,** | : | |
| **ALBERTO G. MUSALEM, JEFFREY R.** | : | |
| **SCHMID, and CHRISTOPHER J. WALLER,** | : | |
| **each in their official capacities as Members of** | : | |
| **the Federal Open Market Committee; and the** | : | |
| **FEDERAL OPEN MARKET COMMITTEE,** | : | |
| | : | |
| *Defendants.* | : | |
| | : | |
| | : | |
| | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER

## INTRODUCTION

For nearly five decades, the Federal Open Market Committee ("FOMC") has illegally conducted its deliberations in closed-door sessions, defying its clear duty under the Government in the Sunshine Act ("Sunshine Act" or "Act"). A keystone of post-Watergate reforms, the Act was designed to restore public trust in government by requiring agencies like the FOMC to hold their meetings in public. The FOMC, however, has flouted its obligations under the Act, adopting a categorical policy barring the public from every single meeting since 1977. *See* 12 C.F.R. § 281.1 (the FOMC's "Secrecy Policy"). That policy, which dispenses with the case-by-case closure votes required by the Act, undermines the democratic accountability that the Sunshine Act was designed to protect and denies Americans the transparency they are entitled to by law.

FOMC meetings are not mere bureaucratic exercises. During these meetings, the FOMC considers a wide range of vital economic data and makes pivotal decisions on interest rates, asset purchases, and monetary policy that shape the nation's economic landscape, affecting borrowing costs, inflation, and market stability for every American business and household. These deliberations determine the federal funds rate and other policies that ripple through the economy, influencing everything from corporate investments to family budgets. By conducting these meetings behind closed doors, the FOMC withholds critical insights that stakeholders—businesses, investors, and citizens—need to anticipate and respond to economic shifts. This opacity stifles public discourse and prevents Americans from engaging with policies that directly impact their financial well-being, contravening the Act's core purpose.

Azoria Capital, Inc. ("Azoria") is one such entity directly impacted by the Defendants' unlawful practices. Azoria is an investment management firm founded and led by James T. Fishback. It manages the Azoria 500 Meritocracy ETF (ticker: SPXM) and the forthcoming Azoria

Golden Age ETF (ticker: GAGE), which is set to launch on August 5, 2025. Azoria's business is highly sensitive to macroeconomic conditions—particularly interest rates, inflation expectations, and credit availability—which are directly impacted by monetary policy decisions the FOMC makes in secret.

The FOMC's unlawful secrecy deprives Azoria of real-time access to these deliberations, forcing Azoria to allocate capital amid the FOMC's deliberately ambiguous signals, vague speeches, and meeting minutes released weeks later. This secrecy impairs Azoria's ability to make informed investment decisions, frustrating its efforts to fulfill its fiduciary duties to its investors. This lack of transparency not only denies Azoria its statutory rights; it forces Azoria to navigate markets with incomplete information, risking capital misallocation and economic loss that cannot be undone. In short, the FOMC's Secrecy Policy does not just limit information—it denies Americans in general, and Azoria in particular, their statutory right to understand the policies shaping their economic reality.

The FOMC's upcoming July 29–30, 2025 meeting threatens to perpetuate this violation, inflicting immediate and concrete economic harm on Azoria and the public unless this Court intervenes. A temporary restraining order is essential to enforce the Sunshine Act's mandate and ensure the FOMC opens its meetings or justifies closure through proper procedures. Azoria meets the temporary restraining order ("TRO") standard, because: (1) Azoria is likely to succeed on the merits, as the FOMC's Secrecy Policy providing for the blanket closure of all meetings, including the July 29–30 meeting, violates the Sunshine Act and the Administrative Procedure Act ("APA"); (2) Azoria faces irreparable harm from the FOMC's ongoing secrecy, including through denial of information to which it is statutorily entitled and frustration of its ability to conduct its business; (3) the balance of equities favors transparency; and, (4) the public interest demands accountability

for decisions impacting the entire economy. Accordingly, the Court should enter a TRO enjoining Defendants from meeting behind closed doors for the FOMC's July 29–30 meeting. After hearing Azoria's motions for preliminary and permanent injunctive relief, the Court should preliminarily and permanently: (1) enjoin the Defendants from holding closed-door meetings without properly invoking any exemption to the Sunshine Act's open meeting provisions; and (2) declare invalid, set aside, and enjoin Defendants from enforcing the Secrecy Policy.

LEGAL AND FACTUAL BACKGROUND[1]

## I.    The Federal Reserve System

The Federal Reserve System is the United States' central banking authority. *See* Federal Reserve Act of 1913, Pub. L. No. 63-43, 38 Stat. 251. The Federal Reserve System has two primary components: the Board of Governors ("Board") and the twelve regional Federal Reserve Banks ("FRBs"). *See, e.g.*, *Bloomberg L.P. v. Bd. of Governors of Fed. Rsrv. Sys.*, 649 F. Supp. 2d 262, 265 (S.D.N.Y. 2009), *aff'd sub nom. Bloomberg, L.P. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 601 F.3d 143 (2d Cir. 2010) (citation omitted).

The Board is a collegial body of seven members, each appointed by the President and confirmed by the Senate. 12 U.S.C. § 241. Headquartered in Washington, D.C., the Board oversees the operations of the Federal Reserve System, including monetary policy, bank supervision, and financial regulation. *See, e.g.*, *id..* The FRBs are "semi-autonomous institutions with private funding and independent corporate structures" chartered by Congress and often referred to as "fiscal agents" of the government. *See, e.g.*, *Bloomberg L.P.*, 649 F. Supp. 2d at 265-66 & n.1 (citing 12 U.S.C. § 391; 31 CFR § 210.7).

---

[1] The facts are set out in the Verified Complaint, with key portions restated here for convenience.

Along with the Board and the FRBs, "An additional component of the Federal Reserve System is the [FOMC], *a separate governmental agency* that shares offices with the Board." *Id.* at 266 (emphasis added). The FOMC has twelve members—the seven members of the Board, and five representatives of the FRBs. 12 U.S.C. § 263(a). The FOMC sets U.S. monetary policy primarily by setting the federal funds rate, the benchmark interest rate that influences borrowing costs for banks, businesses, and consumers.[2] The FOMC also oversees asset purchase programs, such as quantitative easing, which inject liquidity into financial markets to stabilize or stimulate economic activity. The FOMC convenes at least eight times annually in Washington, D.C., to assess economic conditions and determine monetary policy actions. Its next regular meeting[3] is scheduled for July 29–30, 2025.

The Federal Reserve's monetary policy—implemented through the FOMC's decisions—has profound effects throughout the entire U.S. economy, and impacts every U.S. citizen and business alike. Indeed, as this Court recently observed, "the Federal Reserve sets the federal funds rate… which permeates every corner of the American economy." *Grundmann v. Trump*, 770 F. Supp. 3d 166, 180 (D.D.C. 2025) (subsequent history and citation omitted). In short, the influence of the FOMC, and the Federal Reserve System of which it is a part, cannot be overstated.

---

[2] *See generally* 12 U.S.C. § 263(b) (providing that "No Federal Reserve bank shall engage or decline to engage in open-market operations under sections 348a and 353 to 359 of this title except in accordance with the direction of and regulations adopted by the Committee [*i.e.*, the FOMC]. The Committee shall consider, adopt, and transmit to the several Federal Reserve banks, regulations relating to the open-market transactions of such banks.").

[3] Plainly, these regular FOMC meetings satisfy the Act's definition of "Meeting," which includes "the deliberations of at least the number of individual agency members required to take action on behalf of the agency where such deliberations determine or result in the joint conduct or disposition of official agency business, but does not include deliberations required or permitted by subsection (d) [votes on whether to close a meeting] or (e) [public announcements of meetings, including expedited meetings]." 5 U.S.C. § 552b(a)(2); *see also id.* § 552b(a)(3) (defining "member" as "an individual who belongs to a collegial body heading an agency.").

## II.  The FOMC's Policy of Noncompliance with the Sunshine Act

The Sunshine Act requires multi-member federal agencies (or subdivisions of such agencies that are authorized to act on their behalf) to open their meetings to the public unless a narrow, specific exception applies. 5 U.S.C. § 552b(b) (presumption of openness) (c) (enumerating exceptions). When invoking such an exception, the agency must do so on a meeting-by-meeting basis through a vote that is published, along with an explanation of the closure. *Id.* § 552b(d)(1).

Specifically, "[a]ction [to close any meeting or portion of a meeting] shall be taken only when a majority of the entire membership of the agency…votes to take such action. A separate vote of the agency members shall be taken with respect to each agency meeting a portion or portions of which are proposed to be closed to the public," with each vote publicly disclosed within one day, alongside "a full written explanation of [the agency's] action closing the portion together with a list of all persons expected to attend the meeting and their affiliation." *Id.* § 552b(d)(1), (3). Agencies must also provide public notice at least one week prior to their meetings detailing the "time, place, and subject matter of the meeting, whether it is to be open or closed." *Id.* § 552b(e)(1). For closed meetings, agencies must keep complete transcripts, recordings, or minutes, and must disclose non-exempt segments promptly to the public. *Id.* § 552b(f).

Nevertheless—for nearly five decades—the FOMC has flouted the Act, categorically closing every meeting it has held since 1977. *See* 12 CFR § 281.1. Relying on unsupported claims that the Act does not apply to the FOMC, or alternatively that certain exemptions justify blanket, preemptive closure of *all* portions of all FOMC meetings without the individualized votes and explanations required by law, the FOMC has withheld real-time access to deliberations that shape the nation's monetary policy and economic future, operating as if the Sunshine Act's requirements simply do not exist. The FOMC's unlawful characterization of the Sunshine Act—and its

application to the FOMC—is enshrined in its Secrecy Policy, 12 CFR § 281.[4] True to its pattern and practice over decades, the FOMC's upcoming July 29–30 meeting will be closed to the public, even though the FOMC has not properly invoked any exception to the Sunshine Act by vote.

### III. Azoria is irreparably harmed by the FOMC's Secrecy Policy and its noncompliance with the Sunshine Act.

Azoria Capital, Inc. ("Azoria") is a Delaware-based investment management firm founded and led by James T. Fishback. Compl. ¶ 9. Azoria currently manages the Azoria 500 Meritocracy ETF (ticker: SPXM), which invests in a subset of the top 500 U.S. listed companies. *Id.* Azoria is also in the final stages of launching its Azoria Golden Age ETF (ticker: GAGE), which will invest in U.S.-listed companies poised to lead in artificial intelligence, the resurgence of domestic manufacturing, and American energy independence. *Id.* ¶¶ 9, 74. The Azoria Golden Age ETF will launch on August 5, and Azoria must make initial investment allocations by August 1. *Id.* These allocation decisions are sensitive to macroeconomic conditions—particularly interest rates, inflation expectations, and credit availability—which are directly shaped by the FOMC's monetary policy decisions. *E.g.*, *id.* ¶¶ 75–76. Among the assets in the Golden Age ETF, Azoria intends to hold U.S. Treasury bonds, the value of which is directly impacted by the FOMC's interest rate and asset purchase decisions. *Id.* ¶ 76.

Because Azoria actively manages its ETFs, understanding the FOMC's internal deliberations—such as whether its members are advocating for rate hikes, pauses, or cuts—is critical for Azoria's understanding of the forward path of interest rates and monetary policy. *See, e.g.*, *id.* ¶¶ 74–76. Yet—relying upon the Secrecy Policy—the United States central banking authority operates behind a wall of opacity. FOMC member speeches are vague by design. Official

---

[4] The Policy may be viewed at:
https://www.federalreserve.gov/monetarypolicy/files/fomc_sunshineactpolicy.pdf.

meeting minutes—released three weeks after the fact—are carefully worded in the third person, avoiding accountability or public oversight.[5] And the full meeting transcripts, which reveal the true nature of the deliberations, are withheld for five years and edited prior to public disclosure.[6]

Without access to the FOMC's real-time thinking, Azoria—as a fiduciary—cannot properly invest. It is forced to anticipate policy shifts with incomplete information based on vague speeches and minutes of limited informational value. And because the FOMC refuses to open any part of its extensive, multi-day meetings to the public, Azoria does not even have the benefit of the FOMC's discussion of economic data, or its views on the general condition of the American economy. This situation, rooted in the FOMC's improper refusal to comply with the Sunshine Act's mandates, places Azoria at the mercy of a system designed to obscure rather than illuminate the forces shaping America's economy and Azoria's investments.

Additionally, Azoria shares President Donald J. Trump's concerns that the Federal Reserve, under the leadership of Chair Jerome Powell, may be making monetary policy decisions based on the Chair's personal views of the President and his policies, rather than objective economic considerations. Compl. ¶¶ 81–83. There is no way Azoria—or any American—can know the extent to which political motivations are influencing the Federal Reserve's monetary policy actions unless the Sunshine Act is permitted to serve its lawful role.

Transparency is not optional in a democracy, especially when the livelihoods of American families and businesses hang in the balance.

---

[5] *See, e.g.,* Minutes of the Fed. Open Mkt. Comm., June 17–18, 2025, https://www.federalreserve.gov/monetarypolicy/files/fomcminutes20250618.pdf.

[6] *See generally* Tim Todd, Federal Reserve Bank of Kansas City, *A Corollary of Accountability: A History of FOMC Policy Communication* (Aug. 2016), https://www.kansascityfed.org/documents/6512/acorollaryofaccountability.pdf (accessed July 7, 2025).

## LEGAL STANDARD

"A TRO is a temporary measure to preserve the *status quo ante* during the pendency of proceedings for preliminary or permanent injunctive relief." *AIDS Vaccine Advoc. Coal. v. United States Dep't of State*, No. 25-5046, 2025 WL 621396, at *1 (D.C. Cir. Feb. 26, 2025) (citing 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2951 (3d ed. June 2024 update)). To obtain a temporary restraining order, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter*, 555 U.S. at 20); *Am. Foreign Serv. Ass'n v. Trump*, No. 1:25-cv-352 (CJN), 2025 WL 435415, at *1 (D.D.C. Feb. 7, 2025).

"Courts in this Circuit have adopted a sliding scale approach to the TRO analysis, whereby a relatively strong showing on one of these factors may partially offset weakness in another, although some non-speculative showing of irreparable harm is essential." *RFE/RL, Inc. v. Lake*, 772 F. Supp. 3d 79, 83 (D.D.C. 2025) (citing *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995)).

## ARGUMENT AND AUTHORITY

**I.    Azoria will likely succeed on the merits of its challenge to the FOMC's Secrecy Policy and practice of conducting its meetings—including the July 29–30 meeting—in secret.**

**a.    Azoria has standing to challenge the FOMC's Secrecy Policy.**

**i.    Azoria has statutory standing under both the Sunshine Act and the APA.**

Azoria has statutory standing under the Sunshine Act, because it provides for a cause of action by "any person against an agency prior to, or within sixty days after, the meeting out of which the violation of this section arises." 5 U.S.C. § 552b(h)(1). Because Azoria brings this suit

before the July 29–30 meeting (and, indeed, "before" all future FOMC meetings) it has statutory standing to challenge the FOMC's Sunshine Act violations in connection with those meetings.

Azoria also has statutory standing to challenge the Secrecy Policy under the APA, which provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The FOMC's Secrecy Policy has denied, and will continue to deny, Azoria access to information that it is entitled to receive under 5 U.S.C. § 552b.

The Secrecy Policy is also "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;" and/or "without observance of procedure required by law," in violation of the APA. 5 U.S.C. § 706(1), (2)(A), (C), (D). Accordingly, Azoria has statutory standing to challenge the Secrecy Policy under the APA. 5 U.S.C. § 702.

### ii.    Azoria has Article III standing because it suffers informational injury under the Secrecy Policy.

Article III of the United States Constitution extends "the judicial Power of the United States . . . only to 'Cases' and 'Controversies.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016), *as revised* (May 24, 2016) (quoting U.S. CONST. art. III, §§ 1, 2) (cleaned up). As a result, before a litigant may invoke the judicial power of the federal courts, it must allege "Article III standing," which "requires a concrete injury even in the context of a statutory violation." *Spokeo,* 578 U.S. at 341. Even where—as here—a plaintiff has statutory standing, they also must have Article III standing. This requires the plaintiff to allege injury in fact, a sufficient causal connection between the injury and the conduct complained of, and likely redressability by the court. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (citation omitted) (cleaned up).

Importantly, "[t]he law is settled that a denial of access to information qualifies as an injury in fact [under Article III] where a statute (on the claimants' reading) requires that the information be publicly disclosed and there is no reason to doubt their claim that the information would help them." *Campaign Legal Ctr. v. FEC*, 31 F.4th 781, 783 (D.C. Cir. 2022) (quoting *Campaign Legal Ctr. & Democracy 21 v. FEC*, 952 F.3d 352, 356 (D.C. Cir. 2020)).[7] In other words, "A plaintiff has informational standing, so long as the plaintiff has a statutory right to seek the information that the agency withheld." *Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 77 F.4th 679, 686 (D.C. Cir. 2023) (citing *Friends of Animals v. Jewell*, 824 F.3d 1033, 1041 (D.C. Cir. 2016)). In fact, the D.C. Circuit explained that "a plaintiff suffers an informational injury when an agency…adopts a rule that places a legally unsupported limit on its statutory reporting requirements." *Id.* (citing *Waterkeeper All. v. EPA*, 853 F.3d 527, 533 (D.C. Cir. 2017)).

Because Azoria is asserting its right to observe the FOMC's deliberations in a meeting that is required by law to be open (or closed only to the extent and under the procedures the Sunshine Act provides), it suffers informational injury. That injury is caused by the FOMC's Secrecy Policy and Defendants' continued adherence thereto and implementation thereof. The Court can redress that injury by enjoining the FOMC from conducting its July 29–30 meeting—and its future meetings—in violation of the Sunshine Act. Azoria has Article III standing to bring this action.

---

[7] *See also, e.g.*, *Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 77 F.4th 679, 685 (D.C. Cir. 2023) (plaintiff suffers informational injury where "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure.").

**b.** **Closing the July 29–30 FOMC meeting to the public violates the Sunshine Act.**

**i.** **The FOMC must comply with the Sunshine Act.**

The Sunshine Act requires that—unless a statutorily enumerated exception applies—"every portion of every meeting of an agency shall be open to public observation." 5 U.S.C. § 552b(b). Under the Act, "the term 'agency' means any agency, as defined in section 552(e) of this title [*i.e.*, the Freedom of Information Act (FOIA)], headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate, and any subdivision thereof authorized to act on behalf of the agency." 5 U.S.C. § 552b(a)(1).[8] The FOMC satisfies both parts of this definition.

First, both the FOMC and the Board satisfy the definition of "agency" under FOIA. Under FOIA, "agency" "includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f)(1). Courts recognize the Board as an agency within the meaning of FOIA. *See, e.g.*, *A. G. Becker Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 502 F. Supp. 378, 383 (D.D.C. 1980). The Board's FOIA-implementing regulations, 12 CFR § 261.11, confirm this.

Courts also recognize the FOMC as "a *separate* governmental agency that shares offices with the Board." *Bloomberg L.P.*, 649 F. Supp. 2d at 266. The FOMC's FOIA-implementing

---

[8] As this Court recently observed, "Section 552b(a)(1) adopts the definition of agency provided 'in section 552(e) of this title.' But no such definition is provided in 5 U.S.C. § 552(e). Instead, this cross-reference appears to properly refer to 5 U.S.C. § 552(f), a previous version of which was located at 5 U.S.C. § 552(e) when the Open Meetings Act was enacted." *Fray v. Buttigieg*, No. 1:23-CV-03708 (TNM), 2024 WL 1758634, at *4 (D.D.C. Apr. 24, 2024) (quoting 5 U.S.C. § 552b(a)(1)) (citing Gov't in the Sunshine Act, Pub. L. 94-409, 90 Stat. 1241 (1976); 5 U.S.C. § 552(e) (1976)). Accordingly, this Memorandum addresses why the FOMC satisfies FOIA's definition of agency, currently codified at 5 U.S.C. § 552(f).

regulations further confirm the FOMC's status as an agency within the meaning of FOIA. *See* 12 C.F.R. § 271(b)(2) (FOMC regulation stating, "Subpart B of this part implements the Freedom of Information Act (FOIA) (5 U.S.C. 552)").

Second, both the FOMC and the Board are "headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate." 5 U.S.C. § 552b(a)(1). For its part, "[t]he Board of Governors of the Federal Reserve System [] shall be composed of seven members, to be appointed by the President, by and with the advice and consent of the Senate[.]" 12 U.S.C. § 241. Because *all* members of its Board of Governors are selected by presidential appointment with the Senate's advice and consent, the Board must obey the Sunshine Act. *See generally, e.g.*, *A. G. Becker Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 502 F. Supp. at 383.

So too must the FOMC, which—by statute—"shall consist of the members of the Board of Governors of the Federal Reserve System and five representatives of the Federal Reserve banks." 12 U.S.C. § 263(a).[9] Critically, every member of the Federal Reserve's Board of Governors "shall" also be a member of the FOMC. *Id.* Accordingly, when the President appoints (and the Senate confirms) members of the Board, those individuals are also appointed to the FOMC. Because a majority of the FOMC (*i.e.*, seven of its twelve members) are appointed by the President with the advice and consent of the Senate, it is inescapable that the FOMC is "headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate," 5 U.S.C. § 552b(a)(1).

---

[9] 12 U.S.C. § 263(a) further specifies that the bank representatives shall be elected annually, one by the board of directors of the Federal Reserve Bank of New York, and four by the boards of directors of the several other regional Federal Reserve Banks on a rotating basis.

Moreover, the Sunshine Act captures "any subdivision" of a covered agency that is "authorized to act on behalf of the agency." 5 U.S.C. § 552b(a)(1). Congress gave the FOMC a specific statutory mandate, providing that the FOMC "shall consider, adopt, and transmit to the several Federal Reserve banks, regulations relating to the open-market transactions of such banks." 12 U.S.C. § 263(b). Thus, even if the FOMC were not considered an "independent regulatory agency," it would still be considered a "subdivision" of the Federal Reserve System and therefore cannot escape the Act's transparency requirements. *See Dep't of Fish & Game v. Fed. Subsistence Bd.*, 501 F. Supp. 3d 671, 688 (D. Alaska 2020) (finding that the Federal Subsistence Board ("FSB") was "at minimum" a subdivision of the Departments of the Interior and of Agriculture, "whose Secretaries formed the FSB through a delegation of their authority under [the Alaska National Interest Lands Conservation Act]."); *see also Hunt v. Nuclear Regul. Comm'n,* 611 F.2d 332, 336 (10th Cir. 1979) ("the 'subdivision' mentioned in 5 U.S.C. § 552b(a)(1) is a subdivision of the 'collegial body'...composed of a sufficient number of the members of the collegial body as to permit action on behalf of the collegial body.").

In other words, if it is not itself an "agency" under the Sunshine Act, the FOMC remains subject to the Act's open meeting requirement because it is unquestionably a "subdivision" of an agency (the Federal Reserve), composed of a sufficient number of the members of the agency, and "authorized" to act on its behalf. 5 U.S.C. § 552b(a)(1). Indeed, as the Second Circuit recently recognized, "The Fed [] *contains* the [FOMC], composed of officials from the Board and the FRBs. The FOMC is authorized to direct the Fed's open market operations." *United States v. Wells Fargo & Co.*, 943 F.3d 588, 593, n.3 (2d Cir. 2019)) (citing 12 U.S.C. § 263) (emphasis added). Similarly, when this Court recently observed that "the Federal Reserve sets the federal funds rate," it cited 12 U.S.C. § 263, the statute that established the FOMC. *Grundmann v. Trump*, 770 F. Supp. 3d at

180 (D.D.C. 2025). This further supports the conclusion that, when acting to set the federal funds rate, the FOMC—either as an agency in its own right or as a subdivision of the Federal Reserve System—acts as an agency within the meaning of the Act.

### ii. The FOMC's closure of its meetings—including its July 29–30 meeting—violates the Sunshine Act.

The exceptions to the Sunshine Act's requirement that "every portion of every meeting of an agency shall be open to public observation," 5 U.S.C. § 552b(b), are narrow and expressly authorized by statute. Specifically, the open meeting provision "shall not apply to any portion of an agency meeting . . . where the agency properly determines that such portion or portions of its meeting or the disclosure of such information is likely to" result in one of ten specific types of disclosure. 5 U.S.C. § 552b(c). These exceptions are designed to provide the public "the fullest practicable information regarding the decision-making processes of the Federal Government…while protecting the rights of individuals and the ability of the Government to carry out its responsibilities." Sunshine Act, Pub. L. 94-409, sec. 2, 90 Stat. 1241 (1976).

To invoke an exception, "[a] separate vote of the agency members shall be taken with respect to each agency meeting a portion or portions of which are proposed to be closed to the public." 5 U.S.C. § 552b(d)(1).[10] In addition, "[w]ithin one day of any [such] vote [] the agency shall make publicly available a written copy of such vote reflecting the vote of each member on the question." 5 U.S.C. § 552b(d)(3). The FOMC has not held any such vote with respect to its July 29–30 meeting (or any other meeting, for that matter). Of course, the FOMC cannot publish a vote that

---

[10] There is one exception to this requirement: "A single vote may be taken with respect to a series of meetings, a portion or portions of which are proposed to be closed to the public, or with respect to any information concerning such series of meetings, so long as each meeting in such series involves the same particular matters and is scheduled to be held no more than thirty days after the initial meeting in such series." 5 U.S.C. § 552b(d)(1). This exception does not apply here because there has been no vote at all—neither to close one meeting nor to close a "series" of meetings.

never occurs. *Cf.* 5 U.S.C. § 552b(d)(3). Instead, the FOMC has hidden behind its legally unsupported Secrecy Policy and persisted in conducting all of its meetings behind closed doors. This plainly violates the Sunshine Act, 5 U.S.C. § 552b(b), as the FOMC has not "properly determine[ed]" that a Sunshine Act exception applies. *Cf.* 5 U.S.C. § 552b(c).

Perhaps aware that its argument for exempting the FOMC from the Act is fatally flawed, the Secrecy Policy goes on to argue that even if the FOMC is subject to the Act, it is justified in closing every portion of every meeting because of "the exemption dealing with financial speculation." 12 CFR § 281.1. As an initial matter, the Secrecy Policy's attempt to vaguely allude to an unidentified exception falls far short of meeting the Sunshine Act's requirements for properly invoking an exemption to the Act. *See* 5 U.S.C. § 552b(c), (d).

Regardless, the alluded to exemption—Exemption 9(A)—applies to "information the premature disclosure of which would—in the case of an agency which regulates currencies, securities, commodities, or financial institutions, be likely to (i) lead to significant financial speculation in currencies, securities, or commodities, or (ii) significantly endanger the stability of any financial institution." 5 U.S.C. § 552b(c)(9)(A)*; see McKinley v. F.D.I.C.*, 756 F. Supp. 2d 105, 115 (D.D.C. 2010) ("Exemption 9 must be narrowly construed, and the agency bears the burden of proof to show that it is properly invoked."); *Common Cause v. Nuclear Regul. Comm'n*, 674 F.2d 921, 929 (D.C. Cir. 1982) ("Once a person has challenged an agency's decision to close a meeting, the agency bears the burden of proof.").

 Plainly, not all FOMC deliberations inherently trigger financial speculation. Discussions of general economic outlooks, procedural matters, or non-market-sensitive policies—routinely addressed in open meetings by agencies like the Securities and Exchange Commission—do not

meet Exemption 9(A)'s narrow criteria. The FOMC's failure to parse its agendas for openable portions, as required by the Act's presumption of openness, further violates the Act.

 **c.** **The Secrecy Policy and the imminent closure of the July 29–30 meeting violate the APA and are not entitled to deference.**

  Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. In such cases, "[t]he reviewing court shall compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions found to be [] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;" or "without observance of procedure required by law." *Id.* § 706(1), (2)(A), (C), (D). "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706.

  The "FOMC is clearly an 'agency' as that term is defined in the Administrative Procedure Act." *Fed. Open Mkt. Comm. of Fed. Rsrv. Sys. v. Merrill*, 443 U.S. 340, 352 (1979) (citing 5 U.S.C. §§ 551(1), 552(e)).[11] Accordingly, its actions are subject to review under 5 U.S.C. § 706. The Secrecy Policy and Defendants' pattern and practice of holding closed meetings warrants relief under the APA, 5 U.S.C. § 706(1), (2)(A), (C), and (D).

  **i.** **The Secrecy Policy is not entitled to deference.**

  Last year, the Supreme Court decided *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), which confirmed that, "[i]n considering whether an agency's interpretation of its governing

---

[11] *See also* 5 U.S.C. § 701(b) (under APA, "'agency' means each authority of the Government of the United States, whether or not it is within or subject to review by another agency.").

statute is contrary to law, [courts] must 'exercise independent judgment in determining the meaning of statutory provisions." *Institutional S'holder Servs., Inc. v. Sec. & Exch. Comm'n*, No. 24-5105, 2025 WL 1802786, at *5 (D.C. Cir. July 1, 2025) (quoting *Loper,* 603 U.S. at 394, 412-13); *see also Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014) ("[A]n agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate.").

ii.     **The Secrecy Policy and closure of all meetings, including the July 29–30 meeting, should be held unlawful and set aside under the APA**.

As explained above, the Secrecy Policy misreads the Sunshine Act and violates its transparency mandates. Because this Policy—and the closure of all meetings (including the July 29–30 meeting) without properly invoking an exemption by vote—is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," *i.e.*, the Sunshine Act—it should be "declared unlawful and set aside" pursuant to 5 U.S.C. § 706(1), (2)(A).

Similarly, neither the Sunshine Act, the FOMC's enabling statute, nor any other federal law permits the FOMC to self-exempt from the Sunshine Act by regulation. *See generally* 5 U.S.C. § 552b (Sunshine Act); 12 U.S.C. § 263 (FOMC enabling statute). The opposite is true. For instance, in *Pacific Legal Foundation v. Council on Environmental Quality*, the plaintiff alleged that the Council had violated the Sunshine Act because it "had acted in proceedings that constituted 'meetings' under the Act but had neither made the meetings public nor closed the meetings in accordance with the statutory requirements for such action." 636 F.2d 1259, 1262 (D.C. Cir. 1980). The Court of Appeals agreed, invalidating the Council's regulations that purported to "exempt from the open-meeting requirements an entire category of its business." *Id.* at 1265. Similarly, the Secrecy Policy and the FOMC's closure of all meetings, including the July 29–30 meeting, are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), and should be declared unlawful and set aside on that basis.

Finally, closure of the July 29–30 meeting should be declared unlawful and set aside under 5 U.S.C. § 706(2)(D) because it is being attempted "without observance of procedure required by law," *i.e.*, without properly invoking an exemption to the Sunshine Act's open meeting requirement. *See* 5 U.S.C. § 552b(c), (d).

Under § 706(1), the Court should "compel" the FOMC to open its July 29–30 meeting to the public or, at a minimum, properly invoke an exception and publish the Committee members' votes. 5 U.S.C. § 552b(d)(1).

## II.    Azoria will suffer irreparable harm without a temporary restraining order before the July 29–30 meeting and, ultimately, injunctive relief.

"The basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Converdyn v. Moniz*, 68 F.Supp. 3d 34, 46 (D.D.C. 2014) (citing *Wisconsin Gas Co. v. Federal Energy Reg. Com.*, 758 F.2d 669 (D.C. Cir. 1985)). Azoria faces imminent and irreparable harm from the FOMC's categorical closure of its July 29–30 meeting. Azoria's ability to manage its ETFs effectively and fulfill its fiduciary duties to its investors hinges on understanding the macroeconomic environment against which it operates, including the FOMC's decision-making process and its discussions of contemporaneous economic data. *See, e.g.*, Compl. ¶¶ 73–80, 85, 89. Without real-time access to the FOMC's discussions, Azoria is at risk of misallocating capital and suffering portfolio losses that could erode investor confidence in its ETFs. Compl. ¶ *Id.*

This risk is particularly heightened with respect to Azoria's soon-to-be-launched Golden Age ETF. The ETF industry is extremely competitive, and the early performance of a fund is critical to its future success. Azoria's Golden Age ETF is set to launch on August 5, 2025, targeting U.S. companies in artificial intelligence, domestic manufacturing, and energy independence—sectors directly shaped by the Defendants' July 29–30 discussions of macroeconomic conditions and

ultimate interest rate decisions. With capital allocations due by August 1, just days after the FOMC's closed meeting, Azoria faces imminent risk of misallocating capital based on incomplete information and amorphous signals from delayed minutes and vague post-meeting statements. Such missteps could significantly undermine the Golden Age ETF's debut, eroding investor trust in a market where early failures are fatal—a harm that damages cannot remedy.

These facts more than satisfy the TRO and preliminary injunction standard, and this Court has issued similar injunctive relief in the past. For example, in *Public Citizen v. Nat'l Economic Comm'n*, 703 F. Supp. 113 (D.D.C. 1989), this Court "issued a memorandum opinion granting plaintiffs' motion for a temporary restraining order which prohibited defendants from closing to the public the proposed December 12, 1988 meeting of the National Economic Commission, at which it intended to discuss economic assumptions and budget options." This Court issued its TRO on December 9, 1988, three days before the scheduled meeting. *Id.*

Similarly, in *Symons v. Chrysler Corp. Loan Guarantee Bd.*, 670 F.2d 238, 240 (D.C. Cir. 1981), Symons sued in this Court "and moved for a temporary restraining order directing the Board to comply with the statutory requirements of the Act pending a decision on the merits. On the same day, the district court issued a temporary order enjoining the Board from holding any meeting in a manner inconsistent with the Sunshine Act provisions."[12]

---

[12] The Court of Appeals in *Symons* ultimately found that—because the members of the Chrysler Corporation Loan Guarantee Board served in an *ex officio* capacity—the entity was not an "agency" under the Act. In *Symons*, board membership was not automatic but rather *ex officio* and discretionary. *See* 15 U.S.C. § 1862 ("There is established a Chrysler Corporation Loan Guarantee Board which shall consist of the Secretary of the Treasury who shall be the Chairperson of the Board, the Chairman of the Board of Governors of the Federal Reserve System, and the Comptroller General of the United States. The Secretary of Labor and the Secretary of Transportation shall be ex officio nonvoting members of the Board."). In contrast, FOMC membership is an inseparable component of being a member of the Board. Thus, the FOMC is not merely a body composed of ex officio officials (as in *Symons*), but a statutory component of the Federal Reserve System and its Board of Governors. Given that the Sunshine Act aims to promote

### III. The balance of equities and the public's interest weigh heavily in favor of a temporary restraining order.

"It is well established that the Government cannot suffer harm from an injunction that merely ends an unlawful practice." *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 218 (D.D.C. 2020) (internal quotation marks and citations omitted). Similarly, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *Open Communities All. v. Carson*, 286 F. Supp. 3d 148, 179 (D.D.C. 2017). "To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws—such as the APA, as well as regulations . . . that govern their existence and operations." *Id.* (internal quotation marks and citations omitted). Thus, for the same reasons that Plaintiff is likely to succeed on the merits, the balance of the equities and the public's interest require relief.

The Sunshine Act guarantees Americans a right to observe how potentially life-altering policies are being deliberated by policymakers (who are often unaccountable to the public at large and the communities they regulate). It helps ensure that both sophisticated players in heavily regulated industries and everyday Americans alike can make their voices heard about major policy decisions before the government makes them. Accordingly, the Sunshine Act vests both Azoria and the public with the statutory right to access, understand, and engage with a government agency's public meetings, subject only to clearly defined exemptions available in rare circumstances.

Thus—as Congress recognized in passing the Sunshine Act—an injunction weighs heavily in favor of the public's interest. In fact, this Court granted a TRO in *Pub. Citizen v. Nat'l Econ.*

---

transparency in powerful government decision-making bodies, the FOMC—whose members are formally and functionally appointed to serve, by law, on the Committee—squarely meets the definition of a covered agency or subdivision.

*Comm'n* on just this basis, after considering that "[t]he legislative history of the Sunshine Act indicates that exemption employs a balancing test between the presumption in favor of openness and the need to delay the disclosure of certain information in the interest of proper administration." 703 F. Supp. at 125. Where, as here, the FOMC claims that closed meetings are necessary to protect market stability under Exemption 9, the Sunshine Act's presumption of openness and Azoria's irreparable harm from delayed ETF operations tip the balance decisively toward granting a TRO to ensure public access to its deliberations (5 U.S.C. § 552b(b); ¶¶ 53–61, 69–70).

CONCLUSION

For the foregoing reasons, the Court should grant Azoria's TRO application, and schedule a hearing on Azoria's forthcoming motion for preliminary injunction as promptly thereafter as reasonably possible.

If a hearing on this motion would assist the Court, Plaintiff respectfully requests that such hearing be scheduled on or before July 28, 2025.

Date: July 24, 2025

/s/ Steve Roberts
Steve Roberts
District of Columbia Bar No. 989338
Anne Marie Mackin*
Texas State Bar No. 24078898
Jesse Vazquez
District of Columbia Bar No. 1657600
Lex Politica PLLC
#129 7415 SW Parkway
Building 6, Suite 500
Austin, TX 78735
Telephone: (512) 354-1785
sroberts@lexpolitica.com
amackin@lexpolitica.com
jvazquez@lexpolitica.com

**ATTORNEYS FOR PLAINTIFF**

* Motion for admission *pro hac vice* forthcoming